UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN OLAGUES,<br><br>          Plaintiff,<br><br>-v-<br><br>CARL C. ICAHN, HIGH RIVER LIMITED PARTNERSHIP, ICAHN PARTNERS LP, ICAHN PARTNERS MASTER FUND LP, ICAHN PARTNERS MASTER FUND II LP, ICAHN PARTNERS MASTER FUND III LP, and HOLOGIC, INC.,<br><br>          Defendants. | <br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br> |

      Plaintiff, by his attorneys, alleges, based upon knowledge with respect to the facts relating to him and upon information and belief with respect to all other allegations, as follows:

### INTRODUCTION

    1.    This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)") in order to recover short-swing insider trading profits realized by defendants Carl C. Icahn ("Icahn"), High River Limited Partnership ("High River"), Icahn Partners LP ("Icahn Partners"), Icahn Partners Master Fund LP ("Icahn Master"), Icahn Partners Master Fund II LP ("Icahn Master II"), Icahn Partners Master Fund III LP ("Icahn Master III") (collectively, the "Icahn Entities," or, the "Icahn Defendants").

    2.    The Icahn Entities formed a group pursuant Section 13(d)(3) of the Exchange Act, 15 U.S.C. §78m(d)(3), and SEC Rule 13d-5(b)(1), 17 C.F.R §240.13d-5(b)(1), promulgated

1

thereunder by the Securities and Exchange Commission ("SEC"). As a result, the Icahn Defendants at all relevant times beneficially owned 10% or more of the outstanding common stock of Hologic Inc. ("Hologic" or the "Company") making them statutory insiders of Hologic within the meaning of Section 16(b). The Icahn Defendants are required to disgorge any profits they earn through short-swing insider trading (*i.e.*, purchases and sales within a six month period) when they are statutory insiders. Actual misuse of inside information is not an element of the claim although the statute embodies a presumption that statutory insiders have access to such inside information.

## **PARTIES**

3. Plaintiff John Olagues is a shareholder of Hologic.

4. Defendant Carl C. Icahn ("Icahn") is an individual residing in New York, New York.

5. Defendant High River Limited Partnership ("High River") is a Delaware limited partnership whose principal business address is White Plains Plaza, 445 Hamilton Avenue - Suite 1210, White Plains, NY 10601. Defendant Icahn indirectly directs and manages the investments of High River.

6. Defendant Icahn Partners LP ("Icahn Partners") is a Delaware limited partnership whose principal business address is White Plains Plaza, 445 Hamilton Avenue - Suite 1210, White Plains, NY 10601. Defendant Icahn is the investment manager of Icahn Partners.

7. Defendant Icahn Partners Master Fund LP ("Icahn Master") is a Delaware limited partnership whose principal business address is White Plains Plaza, 445 Hamilton Avenue - Suite 1210, White Plains, NY 10601. Defendant Icahn is the investment manager of Icahn Master.

8. Defendant Icahn Partners Master Fund II LP ("Icahn Master II") is a Delaware limited partnership whose principal business address is White Plains Plaza, 445 Hamilton Avenue - Suite 1210, White Plains, NY 10601. Defendant Icahn is the investment manager of Icahn Master II.

9. Defendant Icahn Partners Master Fund III LP ("Icahn Master III") is a Delaware limited partnership whose principal business address is White Plains Plaza, 445 Hamilton Avenue - Suite 1210, White Plains, NY 10601. Defendant Icahn is the investment manager of Icahn Master III.

10. (a) Defendant Hologic is a Delaware corporation that maintains its principal offices at 35 Crosby Drive, Bedford, Massachusetts 01703. Hologic manufactures medical and surgical products for women worldwide.

(b) The Company's common stock ("Common Stock") is registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act and the Common Stock trades on the NASDAQ under the symbol HOLX.

(c) Hologic develops, manufactures, and supplies diagnostics products, medical imaging systems, and surgical products for women in the United States and internationally.

(d) Hologic is a necessary party as this action is brought by Plaintiff in order to obtain a recovery for the Company.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa]. Venue is properly laid in this District because the Icahn Defendants are located in this District.

## SUBSTANTIVE ALLEGATIONS

**The Icahn Entities Were Statutory Insiders**
**Of Hologic Within The Meaning Of Section 16(b)**

12. The Icahn Entities, directly or indirectly, acted together at all relevant times as a group with respect to acquiring, holding, voting and/or disposing of Hologic equity securities. This concerted action was facilitated through, among other things, defendant Icahn whose present principal occupation, according to a November 21, 2013 Schedule 13D filed by the Icahn Defendants with the SEC with respect to Hologic, is managing various private investment funds, including High River, Icahn Partners, Icahn Master, Icahn Master II and Icahn Master III.

13. According to that Schedule 13D, Barberry Corp. is the sole member of Hopper Investments LLC, which is the general partner of High River. Beckton Corp. is the sole stockholder of Icahn Enterprises G.P. Inc., which is the general partner of Icahn Enterprises Holdings L.P. Icahn Enterprises Holdings L.P. is the sole member of IPH GP LLC, which is the general partner of Icahn Capital LP. Icahn Capital LP is the general partner of each of Icahn Onshore LP ("Icahn Onshore") and Icahn Offshore LP ("Icahn Offshore"). Icahn Onshore is the general partner of Icahn Partners. Icahn Offshore is the general partner of each of Icahn Master, Icahn Master II and Icahn Master III.

14. Furthermore, each of Barberry and Beckton is 100 percent owned by defendant Icahn. As such, Defendant Icahn was in a position indirectly to determine the investment and voting decisions made by each of High River, Icahn Partners, Icahn Master, Icahn Master II and Icahn Master III. Defendant Icahn at all relevant times had the power to direct the vote and make all investment decisions regarding Hologic equity securities held by the Icahn Entities and, in fact, made all voting and investment decisions during those times for those entities.

15. In a Form 3 filed with the SEC on November 30, 2013, defendant Icahn reported that as of November 18, 2013 the Icahn Entities beneficially owned 28,031,381 shares of Common Stock or more than 10% of Hologic's outstanding Common Stock based upon the 270,441,506 shares of Common Stock outstanding as of August 1, 2013 as stated by the Company in a Form 10-Q filed with the SEC on August 7, 2013. The 28,031,381 shares of Common Stock beneficially owned by the Icahn Entities at this time consisted of 3,525,000 shares of Common Stock and call options to purchase 24,506,381 shares of Common Stock. Consequently, the Icahn Entities were subject to Section 16(b) as a statutory insider beneficially owning 10% or more of Common Stock and remained subject to Section 16(b) during the relevant time period.

**The Icahn Entities Engaged In Transactions**
**In Hologic Options Generating Short-Swing Profits**

16. In a Form 4 filed on November 20, 2013, the Icahn Entities reported that after they became subject to Section 16(b), they acquired 6,123,498 shares of Common Stock by writing European-Style put options to purchase 6,123,498 shares of Common Stock; the put options, which can only be exercised on the expiration date of the option, had an exercise price of $14.50 and an expiration date of October 28, 2015 (the "Put Options"). The writing of a put option obligates the put writer to purchase the shares underlying the put if the put purchaser decides to exercise the put. The specific transactions were as follows:

| Date | Number of Shares | Exercise Price | Expiration Date | Price |
|---|---|---|---|---|
| November 18, 2013 | 715,000 | $14.50 | October 28, 2015 | $0.01 |
| November 19, 2013 | 757,500 | $14.50 | October 28, 2015 | $0.01 |
| November 19, 2013 | 1,051,342 | $14.50 | October 28, 2015 | $0.01 |
| November 20, 2013 | 242,500 | $14.50 | October 28, 2015 | $0.01 |

| November 20, 2013 | 3,357,156 | $14.50 | October 28, 2015 | $0.01 |

17. Put writing or, selling a put is a strategy where an investor writes a put contract, and by selling the contract to the put buyer, the investor has sold the buyer the right to sell shares at a specific price. The put buyer now has the right to sell shares to the put seller. Here by selling the Puts Options the Icahn Entities obligated themselves to purchase the shares underlying the Put Options if exercised by the Put Options buyer.

18. The put seller receives a fee – the premium - in exchange for committing to buy shares at the strike price if the contract is exercised. If the stock's price falls below the strike price, the put buyer is likely to exercise the put option and the put seller will likely have to purchase shares from the put buyer when the option is exercised. Therefore, a put seller usually has a neutral or positive outlook on the stock that he can use to create a profitable position. If the stock price ultimately moves in line with this outlook, the put is unlikely to be exercised and the put writer keeps the premium as a profit for writing the put.

19. The components of an option premium include its intrinsic value and its time value. The intrinsic value is the difference between the underlying security's current stock price and the strike price of the option. As the option nears its expiration date, the remaining time value decreases and gets closer and closer to zero while the intrinsic value will almost be exactly the difference between the underlying security's stock price and the strike price of the option.

20. During the period in which they were subject to Section 16(b), the Icahn Entities also purchased corresponding American-Style call options, which can be exercised at any time prior to and including its maturity date, for the number of shares of Common Stock corresponding to the number of shares of Common Stock underlying the Put Options. The call options had the same $14.50 strike price and similarly expired on October 28, 2015 (the "Call

Options"). According to Put and Call Option agreements, the Put Options expired on the earlier of October 28, 2015, or the date on which the corresponding Call Options were exercised.

21. On December 12, 2013 the Icahn Entities reported in a Schedule 13D that they exercised the Call Options and, therefore, pursuant to the Put and Call Option agreements, all of the Put Options expired, *i.e*, they were cancelled.

22. Rule 16b-6(d) of the Exchange Act provides that: "Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option."

23. Between November 18, 2013 and November 20, 2013, the Icahn Entities reported writing 6,123,498 Put Options. In the Form 4 reporting their Hologic transactions the Icahn Entities report the price at which they had sold the Put Options, or the premium they received from writing the puts, as $0.01 per share. This means that the Icahn Entities reported that they sold to the Put Options buyer for a premium of $0.01 the right to force the Icahn Entities to buy Common Stock nearly two years in the future.

24. The Icahn Entities' trades in the Call Options and Put Options were executed on the over-the-counter market so they were able to arrange a specific strike price and a specific expiration date. Over-the-counter options traders can choose the characteristics of the options traded. However, in contrast to the premium prices reported by the Icahn Entities, on a sampling of dates the Icahn Entities reported writing the Put Options, transactions in American-Style Hologic put options on the Chicago Board Options Exchange (the "CBOE"), (a regulated options exchange where the terms of each option are standardized by the exchange, *i.e.*, the underlying asset, quantity, expiration date and strike price are known in advance), were reported as:

- November 18, 2013 - a put written that day for Hologic Common Stock with a strike price of $15 and an expiration date of January 15, 2016 had a bid price of $1.30 and an ask price of $1.50 per share;

- November 19, 2013 - a put written that day for Hologic Common Stock with a strike price of $15 and an expiration date of January 15, 2016 had a bid price of $1.10 and an ask price of $1.35 per share; and

- November 20, 2013 - a put written that day for Hologic Common Stock with a strike price of $15 and an expiration date of January 15, 2016 had a bid price of $1.15 and an ask price of $1.35 per share.

25. These Hologic option quotes while not exhaustive are illustrative that on the open market options exchange, in arms'- length transactions, put option writers were requiring significantly more in premiums to write options similar, albeit not identical, to the Put Options. Thus, the premiums the Icahn Entities reported as receiving from the writing of the Put Options did not represent the true value of those options.

26. Instead of demanding the true premium value for the Put Options, the Icahn Entities received a discount on the true premium value of their Call Options by an amount equal to the premium discount they provided with regard to the writing of the Put Options. For example, on November 19, 2013 the Icahn Entities reported purchasing Call Options on 1,051,342 shares of Common Stock at a strike price of $14.50 for the price of $7.63 per share. The CBOE reported that on November 19, 2013, a call purchased that day for Common Stock with a strike price of $15.00, a similar strike price to the Icahn Entities' options, and an expiration date of January 15, 2016 had an ask price of $9.30 per share.

27. The Icahn Entities reported their call option purchase price as $7.63 per share on a day that the average price per share for the Common Stock was $22.50. This means that the intrinsic value of the call option was $22.50 - $14.50, or $8.00 per share and that the Icahn Entities paid $0.00 for the time value of the option. Given that the options did not expire for twenty three months and the underlying price volatility of the Common Stock, the reported purchase price is not reflective of the economic reality of the transaction and would not be the true price achieved through arms'– length transactions. The $15.00 strike price CBOE call option with an intrinsic value of $7.50 ($22.50 - $15.00) had an ask price for the option of $9.30 or $7.50 for the intrinsic value of the option and approximately $1.80 for time value.

28. Similarly, for each reported purchase by the Icahn Defendants of Call Options the CBOE options traded for a higher premium. Thus, the amounts the Icahn Entities reported receiving from the writing of the Put Options did not reflect the true premium consideration obtained, as the amounts reported did not include the discounts, offsets or deductions obtained on the premiums paid for the Call Options. The specific Call Option transactions were as follows:

| Date | Number of Shares | Exercise Price | Expiration Date | Price |
| --- | --- | --- | --- | --- |
| November 18, 2013 | 715,000 | $14.50 | October 28, 2015 | $6.98 |
| November 19, 2013 | 757,500 | $14.50 | October 28, 2015 | $7.33 |
| November 19, 2013 | 1,051,342 | $14.50 | October 28, 2015 | $7.63 |
| November 20, 2013 | 242,500 | $14.50 | October 28, 2015 | $7.80 |
| November 20, 2013 | 3,357,156 | $14.50 | October 28, 2015 | $7.78 |

29. The fact that the price of the Call Options fluctuated between November 18, 2013 and November 20, 2013 while the price of the Put Option premiums received were consistently reported as $0.01, further demonstrates that the $0.01 price was a contrivance and did not reflect the true value of the consideration obtained by the Icahn Entities for writing the Put Options.

30. Even if the Icahn Entities had independently and fortuitously purchased the Call Options at favorable prices on the respective trading days, the premium the Icahn Entities reported receiving from the writing of the Put Options did not reflect the true economic value of those transactions and the Icahn Entities in fact received additional consideration for writing the Put Options which they failed to report. The true premium or consideration received by the Icahn Defendants for writing the Put Options included the corresponding deductions or offsets received by them with respect to payments made for the Call Options.

31. The December 12, 2013 cancellation of the Put Options occurred within six months of the November 18-20, 2013 writing of the Put Options. Accordingly, the true consideration received for writing the Put Options is recoverable for the benefit of Hologic under Section 16(b).

## BASIS FOR INFORMATION AND BELIEF

32. Plaintiff's information and belief is based on, among other things, the SEC Form 3 and 4s and Schedule 13Ds referenced herein.

## ALLEGATIONS AS TO DEMAND

33. On October 23, 2014, demand for prosecution was made on Hologic based on the facts alleged above (the "Demand"). On November 3, 2014, counsel for the Company responded to the Demand asserting that the Icahn Entities trades did trigger the provisions of Section 16(b), however, in the Company's view, the Icahn Entities had already made the required payment which was limited to the value of the reported premiums paid and did not include the value of the discounts, offsets or deductions obtained on the premiums paid for the Call Options.

34. More than sixty days have passed from the date of the Demand and the Company has failed to recover the profits alleged herein or to institute a lawsuit to recover those profits.

## PRAYER FOR RELIEF

37.     WHEREFORE, Plaintiff prays for judgment against the Icahn Defendants as follows: A. Damages pursuant to Section 16(b); B. pre-judgment and post-judgment interest; and C. such other and further relief as this Court may deem just and proper.

DATED this 1st day of April, 2015.

                                             **ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: _____
        Jack G. Fruchter (JF-8435)
        Jeffrey S. Abraham (JA-2946)
        One Pennsylvania Plaza, Suite 2805
        New York, New York 10119
        Tel.: (212) 279-5050
        Fax: (212) 279-3655

**Attorneys for Plaintiff John Olagues**